UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

ADAM KANUSZEWSKI, et al,
    *Plaintiffs – Appellees,*              Case No.: 23-1733

v.

MICHIGAN DEP'T OF HEALTH
AND HUMAN SERVICES, et al,
    *Defendants - Appellants*
                                    /

**REPLY REGARDING MOTION TO FULLY DISMISS THE APPEAL TAKEN BY DEFENDANT KRAUSE AND TO PARTIALLY DISMISS THE APPEAL TAKEN BY THE REMAINING STATE DEFENDANTS DUE TO VOLUNTARY MOOTNESS**

Federal courts are ones of limited jurisdiction. "[U]nder Article III, the 'federal courts are without power to decide questions that cannot affect *the rights of litigants in the case before them.*'" *Resurrection Sch. v. Hertel (En Banc)*, 35 F.4th 524 (6th Cir. 2022) (quoting *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974)) (emphasis added). Mootness is a question of jurisdiction, which "derives from the requirement of Article III of the [United States] Constitution under which the exercise of judicial power depends upon the existence of a case or controversy." *North Carolina v. Rice*, 404 U.S. 244, 246 (1971).

The District Court below divided the case into two distinct parts—

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

the blood spots issues and the medical data issues.[1] See **Opinions, RE 171, 214, 263.** The circumstances here provide there is no ability or reasonable expectation that Defendants will ever be able to return the indefinite (or long-term) storage these nine specific Infants' dried blood spots because the government simply surrendered them back without even attempting to ask for a stay of enforcement on their loss pending appeal. *Akrawi v. Remillet,* 504 Fed. App'x 450, 452 (6th Cir. 2012) ("We certainly do not fault the defendants for their compliance with the district court's order; *but if they wanted to challenge it, they should have sought a stay of the order from this court.*"). In choosing to reach a deliberate stipulation for only a *partial* stay solely regarding the data issues, it voluntarily compiled with the decision of the District Court on the blood spots issues when it could have – or at least tried – to effectuate an appeal

---

[1] Appellants attempt to suggest the blood spots issues and the medical data issues are "analytically joined." **CA6 Dk# 30, PageID # 19.** But that cannot be. The District Court ruled in favor of Plaintiff-Parents by summary judgment on the blood spots portion and left *only* the data portion for trial. If these were, in fact, 'analytically joined,' the grant of summary judgment on the former would have been impossible. But, as this record reviews, they were and always treated analytically *different*. There was no "interconnectedness of rDBS and data" — **CA6 Dk# 30, PageID # 19**— the former was decided under the Fourteenth Amendment with a strict scrutiny review and the latter was decided on a Fourth Amendment lack-of-warrant exception.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

otherwise. Because those dried blood spots have been returned to the Parents, those issues involving the blood spots are moot. **CA6 Dk# 30, PageID # 10** (conceding the dried blood spots "have been returned to [the Parents'] custody. Data, however, remains in [State-] Defendants' custody.") When taking such compliance action, dismissal on the moot portion[2] is appropriate. *Constangy, Brooks & Smith v. NLRB*, 851 F.2d 839, 841-842 (6th Cir. 1988).

Here, problematically, the State-Appellants wants to fight a strawman. Asking this Court to reverse the affirmative but moot decision of District Court would be, in effect, seeking to have this Court issue an advisory opinion about keeping the dried blood spots of nearly everyone else (i.e. others outside of the nine-children at issue in this case); that is not permissible due to the absence of a live controversy. *Mann Constr., Inc. v. United States*, 86 F.4th 1159, __[3] (6th Cir. 2023). It would be "nothing more than issu[ing] a jurisdiction-less 'advisory opinion.'" *Id.*[4]

---

[2] As of today, Appellant Krause has not filed a response to the motion to dismiss and the deadline has since passed.

[3] *Mann* was recently issued and not yet been paginated.

[4] Defendants cite *Church of Scientology of Calif. v. United States*, 506 U.S. 9, 13 (1992) to suggest that this Court could still "fashion *some* form of meaningful relief" regarding the destroyed bloodspots. However, in *Scientology*, the Supreme Court recognized that it was not possible to

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

Alternatively, only the State Appellants request *Munsingwear* relief—equitable vacatur of the District Court's judgment—for any portion of the appeal this Court deems moot. Vacatur is "extraordinary" relief, *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 26 (1994), and party seeking vacatur must demonstrate its "equitable entitlement" to it. *Teamsters Local Union No. 1199 v. Coca-Cola Consolidated, Inc.*, 854 Fed. App'x 675, 677 (6th Cir. 2021). Because "the *Munsingwear* rule is neither statutorily nor constitutionally required," *Nat'l Union Fire Ins. Co. v. Seafirst Corp.*, 891 F. 2d 762, 766 (9th Cir. 1989), a vacatur decision "is informed almost entirely, if not entirely, by the twin considerations of fault and public interest." *Ford v. Wilder*, 469 F.3d 500, 506 (6th Cir. 2006).

As to fault, the *Munsingwear* remedy should only be considered when the requestor is deprived of the opportunity to appeal "through no fault of their own." *Resurrection*, 35 F.4th at 530; see also *Wisconsin v. Baker*, 698 F.2d 1323, 1331 (7th Cir. 1983) (vacatur only appropriate

---

"withdraw all knowledge" the IRS had improperly gained from an improper summons, yet the court could still effectuate *some form* of relief "by ordering the Government to return the records." *Id.* For obvious reasons, *Scientology* lends no aid to Defendants in *this* case.

4

"when circumstances *beyond an appellant's control* render[s] moot a question decided and appealed from."). When the government undertakes action "in circumstances that they should have known would moot the appeal," vacatur is to be denied. *Ford,* 469 F.3d at 507 fn.10. The fact "that a party *chooses* to comply with [prior court decision] is hardly a reason to vacate it." *Doster v. Kendall,* 65 F.4th 792, 793 (6th Cir. 2023) (Kethledge, J., concurring). *Munsingwear* relief is properly refused when the deliberate actions of the losing party contribute to the mootness of the question on appeal. "The principal condition to which we have looked is whether the party seeking relief from the judgment below caused the mootness by voluntary action." *Ford*, 469 F.3d at 506 (citing *Bancorp,* 513 U.S. at 24); see also *Chapman v. Doe*, 143 S. Ct. 857, 857 (2023) (Jackson, J., dissenting).

In this case, the government's lost opportunity did not arise from happenstance of the confluence of outside events but from the failure to obtain or seeking to obtain a full stay pending appeal.[5] The government

---

[5] Local Rule 7.1(a) of the Eastern District requires a movant to ascertain whether a motion will be opposed. Defendants desired a *full* stay and Plaintiffs opposed. If Defendants wanted to meaningfully appeal the entire case, they could have simply gone to the District Court judge with their request for a full stay. Instead, a stipulated partial stay order

officials elected to broker a compromise regarding enforcement of the dried blood spots portion of the District Court's judgment to eliminate the uncertainty of a discretionary stay (or denial of stay) on the challenge to the successful data claims. Defendants were never "stopped from opposing on direct review." **CA6 Dk# 30, PageID # 23** (citing *Arizonans for Official English v. Arizona*, 520 U.S. 43, 71 (1997)). The stoppage and decision to comply was one of their own choosing and fully informed by their knowledge that "there now exists a published federal [district court] decision deeming [their] course of conduct unconstitutional." **CA6 Dk# 30, PageID # 24**. The stipulation for the stay itself specifically acknowledges "that prompt destruction of all rDBS and associated data will implicate the mootness doctrine." **Stipulated Order, RE 269 PageID # 7050**.

Defendants were fully aware of mootness concerns and clearly chose to hedge their bets by negotiating for *a partial stay* (instead of litigating for a comprehensive stay). *Id.* ("In order to ensure the potential for *partial* relief on appeal…"). This compromise was a strategic and

---

was intentionally negotiated out. That was a purposeful choice by Defendants. The particular judge assigned is open to and readily amenable to stays pending appeals. See **RE 77, PageID # 1258-1261**.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

informed choice by Defendants—with an obvious benefit to their ability to challenge the data rulings on appeal. However, the portion of the judgement they forwent on appeal "is not [ever] unreviewable, but simply unreviewed by [Defendant's] own choice." *Remus Joint Venture v. McAnally*, 116 F.3d 180, 185 (6th Cir. 1997) (citing *Bancorp*, 513 U.S. at 29). "[W]here mootness results from settlement, however, the losing party has voluntarily forfeited his right legal remedy by the ordinary processes of appeal or certiorari, thereby surrendering his claim to the equitable remedy of vacatur." *Coalition for Gov. Procurement v. Fed. Prison*, 365 F.3d 435, 485 (6th Cir. 2004) (citing *Bancorp*, 513 U.S. at 25).

Defendants correctly acknowledge that the District Court's holdings *might* threaten their future defense of qualified immunity in another like-kind case because it now provides all reasonable officials with notice that their actions as to retention of dried blood spots (without *informed* consent) are unconstitutional. But that possibility was plainly apparent before the Defendants sought a compromise.[6] So yes, the

---

[6] More importantly, the guidance should be welcomed by Defendants. Judge Ludington's well-reasoned analysis offers a roadmap for operating the post-screening portions of the Michigan Newborn Screen Program in a lawful manner into the future.

District Court's decision *might* influence unrelated newborn screening litigation[7] in the future. **CA6 Dk# 30, PageID # 10.** Again, that "possibility… is not in itself a reason for vacatur, or else the argument would apply to every case that became moot pending appeal and vacatur would not be an extraordinary remedy at all." *Ford*, 469 F.3d at 505-506.[8]

---

[7] The State Defendants point to the case of *Ellison v. MDHHS* pending in the Michigan Court of Claims. That lawsuit advances no federal claims—only *state* constitutional or state-law claims. **Response Ex. A.** As such, nothing in *Kanuszewski*, under the federal constitution, binds or acts as mandatory precedent against those claims under a totally different constitution. The only reason *Ellison* is stayed, over the objection of counsel, because these same government attorneys here are continuously demanding it in state court. **Exhibit 1**.

[8] The State Appellants incorrectly cry that the existence of the District Court's decision below will require them to "conform their conduct… at great cost to public health." But this catastrophizing is unwarranted. Literally no one is saying that newborn screening must be stopped—it is just that if the State wishes to keep blood spots and data *after the initial screening is complete*, informed (not general) parental consent is required. The hue and cry of the destruction of public health is a false one—they just need to fix their insufficient consent process, i.e. simply ask moms and dads for clear permission after providing full information in an appropriate setting. The current process employed by Defendants falls *far* short. See Elizabeth Eisenhauer, Ph.D., et al, *Mothers' Decisions About Donating Newborns' Blood Spots For Research: A Qualitative Study,* Journal of Perinatal & Neonatal Nursing, No. 33(4) (2019), *available at* **RE 143-1, PageID # 3404-3414** (study finding 80% of observed sample of mothers of Michigan newborns lacked adequate knowledge to make an informed choice for consent regarding post-testing uses of retained blood spots by Michigan public health officials).

While suggesting that vacatur should ordinarily follow mootness, Defendants point to *Libertarian Party v. Husted*, 497 Fed. App'x 581, 582 (6th Cir. 2012). This non-precedential order offers minimal insight for the current litigation or the law of this Circuit. However, when viewed in its proper context, *Libertarian Party* illustrates the critical role of the second twin considerations of public interest.[9] Consideration of the "public interest" is warranted "because judicial precedents are presumptively correct and valuable to the legal community as a whole" and "are not merely the property of private litigants." *Blankenship v. Blackwell*, 429 F.3d 254, 258 (6th Cir. 2005) (citing *Bancorp,* 513 U.S. at 26).

Both the presumption of judicial correctness and the value to the legal community reach their zenith in the present controversy because this Court's precedent governed every step of the extensive litigation in

---

[9] *Libertarian Party* and the current case are not at the same posture. Application of vacatur in 2012 in *Libertarian Party* cleared the path for proper future litigation of undeveloped election-related issues. The present litigation stands in sharp contrast as a substantial body of Sixth Circuit precedent, including *Kanuszewski*, had already been established before the challenged injunction was litigated in the District Curt. As such, vacatur would not operate as a catalyst for establishing valuable future precedent.

the District Court, including *Kanuszewski v. MDHHS*, 927 F.3d 396 (6th Cir. 2019). As the District Court observed—

> The Sixth Circuit already had its say: under the Fourteenth Amendment, any conduct related to the blood spots and data without informed consent is subject to strict scrutiny. In that realm, the State's conduct was found lacking.

**RE 263, PageID # 6995**. The point is further illustrated by this Court's subsequent discussions regarding the *Kanuszewski* holding—

> A Michigan law required healthcare organizations to collect blood samples from newborns and to store the samples for future use, all without parental consent and all without any explanation why the law advanced the health of the babies. ***This compulsory storage program, we held, violated nonconsenting parents' rights "to make decisions concerning the medical care of their children.***

*L.W. by & through Williams v. Skrmetti*, 83 F.4th 460, 476 (6th Cir. 2023) (citing *Kanuszewski*, 927 F.3d at 396). The judgment (and *L.W.*) appropriately "stand[s] as a caution against violating the [constitutional] rights of men and women…which, by all appearances, is what the [government] did here." *Doster*, 65 F.4th at 793 (Kethledge, J., concurring).

Simply put, in preparing their challenge to those holdings, Defendants made an informed choice between pursuing a comprehensive

10

stay or settling for a partial stay during the course of the appeal.[10] Having elected to hedge their bets, Defendants must not be permitted to wield that choice "as a sword to strike it down through vacatur of the decision in the district court." *Ramsek v. Beshear*, 989 F.3d 494, 501 (6th Cir. 2021).

## CONCLUSION

"*Munsingwear* vacatur" must only be available in "extraordinary" or "exceptional" circumstances. *Bancorp,* 513 U.S. at 26, 29. It is clearly disfavored when the requesting party has made some contribution to the mootness of the issue. *Id.* at 26-27. Such "core principles warrant an exceedingly cautious approach to *Munsingwear* vacatur requests." *Chapman,* 143 S. Ct. at 858 (Jackson, J., dissenting). Because both public

---

[10] Defendants are considered "responsible" for rendering the issue moot whether they settled for a partial stay, failed to move for a stay, or lost the bid for a comprehensive stay. See e.g. *Ford,* 469 F.3d at 506-507; *Constangy,* 851 F.2d at 839 (compliance with a FOIA disclosure order after stay denied); *U.S. v. City of Detroit*, 401 F.3d 448, 452 (6th Cir. 2005) ("mootness by reason of settlement does not justify vacatur of a judgment under review"). Defendants are constrained to acknowledge that they could have litigated for a stay pending appeal and they knew that a failure to do so would render certain issues moot. **Stipulated Stay Order, RE 269, PageID # 7050-7051**.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

interest and fault fully weigh against vacatur, the counter-request for the same must be denied.[11]

## RELIEF REQUESTED

WHEREFORE, the Court is requested to enter an order directing that the appeal by Defendant Christopher Krause (Biobank) must be dismissed in full and the appeal by the State Defendants (MDHHS officials) must be partially dismissed, without vacatur, leaving only the remaining claims involving the claims regarding the medial *data* for adjudication on appeal.

Date: January 2, 2024

s/ Philip L. Ellison
PHILIP L. ELLISON
OUTSIDE LEGAL COUNSEL PLC
PO Box 107
Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com

Attorney for Appellees

---

[11] But even if this Court were inclined to grant vacatur, such does not affect the remedy of attorney fees under Section 1988. See *Ford*, 469 F.3d at 506-507.

## CERTIFICATE OF SERVICE

I hereby certify that on the date stated below, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notice of and a copy of such filing to counsel of record at their email address(es) of record.

Date: January 2, 2024				s/ Philip L. Ellison
						PHILIP L. ELLISON
						OUTSIDE LEGAL COUNSEL PLC
						PO Box 107
						Hemlock, MI 48626
						(989) 642-0055
						pellison@olcplc.com

						Attorney for Appellees