No. 23-1733

In the
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

ADAM KANUSZEWSKI, *et al.*,

    Plaintiffs-Appellees,

v.

MICHIGAN DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*,

    Defendants-Appellants.

Appeal from the United States District Court
Eastern District of Michigan, Northern Division
Honorable Thomas Ludington

**DEFENDANTS-APPELLANTS' JOINT REPLY BRIEF IN SUPPORT OF MOTION TO VACATE ANY DISTRICT COURT DECISION DECIDING CLAIMS THAT ARE NOW MOOT**

| | |
|---|---|
| Daniel J. Ping (P81482) | Jeremy C. Kennedy (P64821) |
| Aaron W. Levin (P81310) | Jerold Lax (P16470) |
| Assistant Attorneys General | Pear Sperling Eggan & Daniels, P.C. |
| Counsel of Record | 24 Frank Lloyd Wright Drive |
| Attorneys for Defendants-Appellants | Ste. D-2000 |
| State Defendants | Ann Arbor, Michigan 48105 |
| Michigan Dep't of Attorney General | Counsel for Defendants-Appellants |
| Corporate Oversight Division | Neonatal BioBank & Christoper Krause |
| P.O. Box 30736 | (734) 665-4441 |
| Lansing, MI 48909 | |
| (517) 335-7632 | |

Dated: January 9, 2024

## INTRODUCTION[1]

Plaintiffs object to Defendants' requested alternative relief based on two related inaccurate premises: (1) that a "comprehensive stay" possibly could have avoided the requested return of Plaintiffs' residual dried blood spots ("rDBS"); and (2) that Defendants are "at fault," in the equitable sense, for declining to seek a broader stay and for adhering to their long-existing policy to comply with requests for return of rDBS.

In fact, a total stay of the district court's injunction would have done nothing to avoid the current factual posture. With respect to rDBS, the injunction required Defendants only to provide a mailer summarizing publicly available information. Defendants could not have obtained a "stay" *of their own policy* to honor requests for the return of rDBS.

And, because it was Plaintiffs' decision to invoke that policy in a certain way, the alleged mootness is attributable to Plaintiffs. Defendants certainly take no issue with Plaintiffs' decision to decline a

---

[1] The instant reply supports only Defendants' December 26, 2023, motion for vacatur as alternative relief (*i.e.*, Part II of Defendants' combined response and motion, Dkt. No. 30). To be clear, it is not a sur-reply in opposition to Plaintiffs' motion to dismiss as moot, and it was filed after consultation with the case manager's office.

request to leave the rDBS in Defendants' custody pending appeal. But Plaintiffs should acknowledge that they were the primary agents in obtaining this result. And, crucially, Defendants are not at equitable "fault"—a bar to vacatur—unless their return of the rDBS to Plaintiffs creates an inference that they were maneuvering for mootness. Defendants' static, preexisting "return" policy squarely precludes such an inference.

Having obtained the rDBS, Plaintiffs have no need for the district court orders to be left in force. If this Court determines that portions of Defendants' appeal is moot, the *Munsingwear* doctrine should apply to moot the pertinent district court decisions.

## ARGUMENT

**I. Plaintiffs misrepresent the exception to the *Munsingwear* doctrine, disregarding their roles as decisionmakers and suggesting a movant must change its policy to obtain vacatur.**

As Defendants previously explained, the events triggering the return of Plaintiffs' rDBS occurred pursuant to consistent policy that existed before, during, and after the district court's judgment. The injunction did not compel the return of the rDBS—it compelled only a

2

more robust effort to obtain "informed consent"—and the return of the rDBS would have occurred at Plaintiffs' request even if Defendants had prevailed on all counts below. Seeking or obtaining a complete stay of the injunction would not have precluded Plaintiffs from mooting this case at *their* option, as they have done. And this is not a case where the losing party capitulated against their will, only to leverage that capitulation to avoid the shadow of the unfavorable decision.

Nevertheless, Plaintiffs insist—incorrectly—that Defendants' adherence to policy was "fully informed by their knowledge that there now exists a published federal district court decision deeming their course of conduct unconstitutional." (Pls.' Reply Br., p. 6 (cleaned up).) Not so. Again, the district court decision did not guide the Defendants' hand in this limited context.

Plaintiffs conspicuously fail to acknowledge either Defendants' static policy or their own roles in effectuating the return of their rDBS. Rather, Plaintiffs press the relevance of the partial stay, which relieved Defendants of their implied obligation to comply (involuntarily) with a request for a destruction of *data*, but left in place Defendants' policy to honor requests for destruction or return of rDBS. They say Defendants'

fault—a prerequisite to avoiding the otherwise-applicable *Munsingwear* vacatur—arose from their "failure to obtain or seeking to obtain a full stay pending appeal." (Pls.' Reply Br., p. 5.)

But look at it this way: Although the stay was termed "partial," it maintained the status quo, 100%. It blocked the potential need for Defendants to take the only action that would have *deviated* from their standard practice (*i.e.*, destruction of data). The partial stay left in place all of *Defendants' own policies* regarding return or destruction of rDBS—as though Defendants had prevailed on all counts, or as though no lawsuit had been filed. What more could Defendants seek from a "total" stay?

Stated still differently, what would a "total stay" have looked like? By requiring Defendants to solicit Plaintiffs for their instruction regarding *data*, the district court's injunction implied an obligation to comply with that instruction. But, as to the return or destruction of *rDBS*, the injunction contained no such implied obligation, because—

4

stay or no stay, lawsuit or no lawsuit—return or destruction of rDBS was *always* available to Plaintiffs.[2]

Thus, a "total stay" would have done nothing to prevent Plaintiffs from mooting this case at their option. It is well-settled that "vacatur must be granted where mootness results from the unilateral action of the party who prevailed in the lower court." *U.S. Bancorp Mortg. Co. v. Bonner Mall Partnership*, 513 U.S. 18, 23 (1994). Here, Plaintiffs prevailed, and Plaintiffs unilaterally invoked Defendants' policies—not the injunction—to achieve the alleged mootness.

Short of changing their own policies on a dime for the express purpose of depriving Plaintiffs of their preexisting ability to obtain return of their rDBS, there was nothing Defendants could do vis-à-vis the injunction to discourage the return of Plaintiffs' rDBS.

---

[2] At best, a "comprehensive stay" would have stayed Defendants' obligation to provide the mailer to Plaintiffs containing publicly available information that Plaintiffs learned during litigation (at the latest). It is called "discovery" for a reason. Indeed, Defendants have been invoking Plaintiffs' ability to achieve this result *since April 2021*. (Defs.' 5/4/21 Mot. to Dismiss, p. 1, ECF No. 147, PageID.4194 ("At all times, Plaintiffs had the ability to . . . have DBS returned or destroyed.").)

Plaintiffs cite Judge Kethledge's concurring opinion in *Doster v. Kendall*, 65 F.4th 792, 793 (6th Cir. 2023), for the proposition that, "when a party chooses to comply" with a court order, it "is hardly a reason to vacate it." Again, compliance with the court order did not encompass the return of the rDBS. Regardless, *Doster* is distinguishable for the same reason as *Ramsek v. Beshear*, 989 F.3d 494 (6th Cir. 2021): In *Doster*, the government had "rescinded the vaccine mandate at issue." 65 F.4th at 793; *see also Ramsek*, 989 F.3d at 501 (reaching same result as to rescission of COVID-19 restrictions on gatherings).

This case stands in stark contrast to those like *Doster* and *Ramsek*. Rather than *changing course* as a reaction to an adverse judgment, Defendants *maintained* their policies and acted consistently therewith. The return of Plaintiffs' rDBS did not comprise a "choice to comply" with the district court's order, which had no impact on Plaintiffs' options. Defendants committed no cynical or strategic maneuvering, akin to that which is designed to trigger the analogous "voluntary cessation" exception to mootness doctrine. *E.g.*, *Resurrection Sch. v. Hertel*, 35 F.4th 524, 529 (6th Cir. 2023) (noting voluntary-

cessation exception did not apply in part because state action did not cease "in response to [the] lawsuit").

Even if Defendants' *inaction* with respect to preexisting policy (rather than Plaintiffs' *affirmative request*) is deemed the proximate cause of the alleged mootness, "cause" is not synonymous with "fault" in the *Munsingwear* context. Rather, as *Ramsek* and Judge Kethledge's concurrence in *Doster* recognize, a party is most clearly at "fault" when their activity "rais[es] the inference that 'mootness was their purpose or that they knew or should have known that their conduct was substantially likely to moot the appeal.'" *Ford v. Wilder*, 469 F.3d 500, 507 n. 10 (6th Cir. 2006) (quoting *Russman v. Bd. of Educ. of Enlarged City Sch. Dist. of City of Watervliet*, 260 F.3d 114, 122 (2d Cir. 2001)) (brackets omitted). Defendants' consistent conduct, therefore, does not represent "fault" in the relevant (equitable) sense. Certainly, there is no available inference that Defendants maintained and complied with their longstanding policies in order to engender mootness. *E.g.*, *Ramsek*, 989 F.3d at 501 (noting that, due to the Governor's decision to rescind the challenged order, it would be "unfair to then reward Governor Beshear" with a windfall vacatur); *id.* (holding that the

7

Governor "cannot use his withdrawal of the Order as both a shield to defend (on mootness grounds) against [the appellee]'s request that we affirm the preliminary injunction, and then as a sword to strike it down through vacatur of the decision in the district court.").

Accordingly, if this Court agrees that certain claims have become moot, this situation is tailor-made for the *Munsingwear* remedy. The alleged mootness was engendered by Plaintiffs' unilateral action, and Defendants' good-faith conduct was the polar opposite of that which counseled against applying the remedy in other cases.

## II. Plaintiffs concede that they intend for the pertinent orders to have legal consequences beyond this case.

As noted in Defendants' motion for alternative relief, vacatur under the *Munsingwear* doctrine is intended in part to head off any "legal consequences" from an unchallenged decision. *Munsingwear*, 340 U.S. at 41. Rather than meaningfully dispute that such consequences are possible, Plaintiffs embrace them—not merely implicitly by resisting the requested vacatur, but explicitly, urging that the district court's orders should apply to Defendants' programs at large, notwithstanding the district court's attempt to limit its holdings to the

8

parties at bar. (*See* Pls.' Reply Br., pp. 6–7, 9–10; *see, e.g.*, 7/31/23 Am. Op. & Order, p. 5, ECF No. 263, PageID.6998 ("[E]njoining Michigan's unconstitutional conduct would likely have significant consequences. Again, however, this case is limited to the blood spots and data of only nine Michiganders.").)

Plaintiffs attempt to minimize the impact of the district court's orders if those orders are truly a "roadmap" for future conduct, (Pls.' Reply Br., pp. 8 n. 8, 10), but, once again, Plaintiffs misrepresent the programs they challenge, as reflected in the unrebutted factual record. Most important, Plaintiffs suggest that Defendants can "simply" start from a clean slate and begin to require Plaintiffs' preferred form of "informed consent." (*Id.* at 8 n. 8.) Although that *sounds* easy enough by itself, it ignores the immediate consequences of such a ruling, which could require Defendants to destroy most, if not all, of the rDBS and/or data currently in their custody.

If such destruction (or its equivalent) truly is compelled by the district court's orders, it will take *decades* under this new paradigm to reacquire a comparable repository of rDBS and data, which Defendants have explained is necessary to operate, maintain, and improve newborn

9

screening in Michigan. Meanwhile—and this is not hyperbole—Michigan infants that would have gone on to lead normal, productive lives instead face the prospect of suffering and death. If that is to be the result, it should occur only upon full, considered briefing in this Court.

## CONCLUSION AND RELIEF REQUESTED

If this Court concludes that any portion of the appeal is moot, Defendants ask this Court to grant its motion for alternative relief by vacating all of the district court decisions evaluating the constitutionality of Defendants' conduct with respect to blood spots.

Respectfully submitted,

/s/ Daniel J. Ping
Daniel J. Ping (P81482)
Aaron W. Levin (P81310)
Assistant Attorneys General
Counsel of Record
Attorneys for Defendants-Appellants
State Defendants
Michigan Dep't of Attorney General
Corporate Oversight Division
P.O. Box 30736
Lansing, MI 48909
(517) 335-7632

Dated: January 9, 2024

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limit,
Typeface Requirements, and Type Style Requirements

1.　　This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(C) because, excluding the part of the document exempted by Federal Rule of Appellate Procedure 32(f), this reply brief contains no more than 2,600 words. This document contains 1,830 words.

2.　　This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Word 2013 in 14-point Century Schoolbook. *See also* Fed. R. App. P. 27(d)(1)(E) (applying preceding requirements to motions).

/s/ Daniel J. Ping
Daniel J. Ping (P81482)
Assistant Attorney General
Counsel of Record
Attorney for Defendants-Appellants
Michigan Department of Attorney General
Corporate Oversight Division
P.O. Box 30736
Lansing, MI 48909
(517) 335-7632

# CERTIFICATE OF SERVICE

I certify that on January 9, 2024, the foregoing document was served on all parties or their counsel of record through the CM/ECF system, as all are registered users.

/s/ Daniel J. Ping
Daniel J. Ping (P81482)
Assistant Attorney General
Counsel of Record
Attorney for Defendants-Appellants
Michigan Department of Attorney General
Corporate Oversight Division
P.O. Box 30736
Lansing, MI 48909
(517) 335-7632