

**Correspondence from Philip L. Ellison, MBA, JD, Esq**
Business Counselor & Attorney at Law
pellison@olcplc.com

February 22, 2024
*SENT VIA ECF*

Clerk of the Court
United States Court of Appeals for the Sixth Circuit
100 E. Fifth Street
Cincinnati, Ohio 45202

     *Re:*    *Rule 28(j) Supplemental Authority Letter*
            *Case No. 23-01733*

Dear Clerk:

This letter is provided pursuant to FRAP 28(j) regarding the pending vacatur motion. Plaintiffs sought dismissal of most of the appeal due to mootness. The State Defendants, in turn, argued a vacatur should issue.

This Court today decided *Marketing Displays Int'l v. Shaw* (23-1028) explaining "three criteria guide our exercise of" the discretion to do so. First, a party must ask for vacatur. Second, it'll vacate only if leaving it in place would have a preclusive effect on subsequent litigation. Third, it is unlikely to be granted when the party seeking it played a role in causing the mootness. The State Appellants fail to satisfy the second and third prongs.

*Preclusive effect.* Leaving the lower District Court's decision in place does not have any preclusive effect on subsequent litigation. Federal trial court decisions are not binding precedents. E.g. *Stone v. Peoples Trust & Sav. Bank*, 363 F. Supp. 2d 1036, 1039 (S.D. Ind. 2005) ("federal district court decisions are not binding on other districts or even judges within the same district"). The same are also not binding on any Michigan state court litigation either. *Abela v. General Motors Corp.*, 677 N.W.2d 325, 327 (Mich. 2004). And because the disputed blood spots have been returned to the Plaintiff-Parents (via counsel), there will not be any additional litigation about the State having public custody or use those same blood spots into the future.

*Role in Causing Mootness.* The State Defendants had a leading role in creating the appeal's mootness. A full stay could have been sought in the District Court or later from this Court. FRAP 8. Instead, they settled by voluntarily agreeing to comply with the District Court's decision regarding the blood spots. **Stipulated Partial Stay, RE 269, PageID # 7051**. Like Ms. Shaw, the State Defendants "contributed to this appeal's mootness." It is clear—that

Great Lakes Bay Region
PO Box 107
Hemlock, MI 48626
Direct   (989) 642-0055
Fax      (888) 398-7003

A Michigan Professional Limited Liability Company    www.olcplc.com

"a party *chooses* to comply with [prior court decision] is hardly a reason to vacate it." *Doster v. Kendall*, 65 F.4th 792, 793 (6th Cir. 2023).

This Circuit's precedents instructs against vacatur. *Shaw* now confirms it.

Best regards,

*Philip L Ellison*

Philip L. Ellison, MBA, JD, Esq.
Counsel for Plaintiffs-Appellees



RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0036p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

MARKETING DISPLAYS INTERNATIONAL,

       *Plaintiff-Appellee*,

  *v.*

BRIANNA SHAW,

       *Defendant-Appellant*.

No. 23-1028

---

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:22-cv-12287—Gershwin A. Drain, District Judge.

Decided and Filed: February 22, 2024

Before: GILMAN, McKEAGUE, and THAPAR, Circuit Judges.

---

**COUNSEL**

**ON BRIEF:** Brian J. Farrar, STERLING ATTORNEYS AT LAW, P.C., Bloomfield Hills, Michigan, for Appellant. Mark Granzotto, MARK GRANZOTTO, P.C., Berkley, Michigan, for Appellee.

---

**OPINION**

---

  THAPAR, Circuit Judge. In life, sometimes it's better to show up late than not at all. But in law, tardiness can be costly. Here, the parties' counsel received several extensions of this court's briefing deadlines. In the meantime, the clock struck midnight on the underlying issue. As a result, this appeal is now moot.

I.

Brianna Shaw left her job at Marketing Displays International (MDI) and began working for another company. But MDI thought Shaw's new employment violated her one-year noncompete agreement, so it sued. During the litigation, MDI sought a preliminary injunction, which the district court granted on December 14, 2022. *Mktg. Displays Int'l v. Shaw*, 646 F. Supp. 3d 897, 900 (E.D. Mich. 2022). Relevant here, the injunction prevented Shaw from working for her new employer for one year. *Id.* at 908.

Shaw appealed in January 2023. After several months of mediation, the parties began filing their appellate briefs in June. But because of six deadline extensions—three requested by each party—the parties didn't finish their briefing until January 2024.

On appeal, Shaw challenges only the part of the injunction that prevented her from working for her new employer. But that part expired on December 14, 2023, so this appeal is moot. *See, e.g.*, *Radiant Glob. Logistics, Inc. v. Furstenau*, 951 F.3d 393, 395–96 (6th Cir. 2020) (per curiam).

II.

Shaw argues otherwise. She posits that a ruling in this appeal would impact (1) her ability to recover from MDI any damages, including reputational harms, caused by the preliminary injunction and (2) MDI's ability to recover attorney fees from her. *See Coal. for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 458 (6th Cir. 2004) ("The test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties." (internal quotation marks omitted)). But this appeal doesn't impact either of those interests. So neither saves this appeal from mootness.

*Shaw's Recovery Against MDI.* When a preliminary injunction is wrongfully issued, defendants may recover damages that they incurred by complying with it. *See, e.g.*, Fed. R. Civ. P. 65(c). This prospect of recovery keeps a case from becoming moot, even after the preliminary injunction expires—and even if, as here, the plaintiff didn't post an injunction bond. *See Int'l Union, UAW v. LaSalle Mach. Tool, Inc.*, 696 F.2d 452, 459 (6th Cir. 1982). Indeed, as the district

court noted when it granted the preliminary injunction, MDI might be subject to "collection" if it doesn't prevail on the merits. *Mktg. Displays Int'l*, 646 F. Supp. 3d at 908.

That said, Shaw can't collect these damages until she acquires a final judgment in her favor. *See Univ. of Tex. v. Camenisch*, 451 U.S. 390, 396–97 (1981). And here, the district court hasn't issued a final judgment on MDI's breach-of-contract claim. To be sure, the court found that MDI was likely to succeed on the merits. *Mktg. Display Int'l*, 646 F. Supp. 3d at 902–06. But that's not a final judgment. So anything we might say about it on appeal wouldn't affect Shaw's ability to recover damages. *See Camenisch*, 451 U.S. at 394. Thus, her possible recovery at the end of the *case* doesn't save this *appeal* from mootness.

*Attorney Fees.* Under Shaw's noncompete agreement, she agreed "to pay all costs incurred by MDI in enforcing the provisions of this Agreement, including reasonable attorney fees." R. 3-3, Pg. ID 102. At the outset, there are at least two ways to read this provision. As written, it suggests MDI can recover any reasonable legal fees it incurs in enforcing the agreement—whether or not MDI prevails. *See Kelly Servs., Inc. v. De Steno*, 760 F. App'x 379, 383–84 (6th Cir. 2019) (endorsing this interpretation). On the other hand, under Michigan law, contractual attorney fees are a form of damages, not costs. *E.g.*, *Fleet Bus. Credit, LLC v. Krapohl Ford Lincoln Mercury Co.*, 735 N.W.2d 644, 648 (Mich. Ct. App. 2007) (per curiam); *see also* R. 3-3, Pg. ID 102 (stipulating Michigan law controls). And to recover damages on a contract, a party must first prove a breach. *Miller-Davis Co. v. Ahrens Constr., Inc.*, 848 N.W.2d 95, 104 (Mich. 2014); *see also Kelly*, 760 F. App'x at 386 (Gibbons, J., concurring). In other words, under this interpretation, MDI wouldn't be able to recover attorney fees unless it first succeeds on its breach-of-contract claim. It hasn't yet.

We need not pick between these competing interpretations. Under either, MDI's right to attorney fees doesn't hinge on the validity of the preliminary injunction. Thus, attorney fees can't resuscitate this appeal, either.

Neither Shaw's ability to recover damages nor MDI's right to attorney fees can save this *appeal* from mootness. They do, however, prevent this *case* from being moot. *See Ohio v. EPA*, 969 F.3d 306, 309 (6th Cir. 2020); *Camenisch*, 451 U.S. at 396. So while we dismiss this appeal,

we remand the case for further proceedings on the merits. The outcome of MDI's breach-of-contract claim will determine whether Shaw can recover from MDI. And it might impact MDI's ability to recover attorney fees.

### III.

Lastly, Shaw asks us to vacate the moot portion of the preliminary injunction. The decision to vacate a lower court's moot order is left to our equitable discretion. *See Coal. for Gov't Procurement*, 365 F.3d at 484; *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39–40 (1950). Three criteria guide our exercise of that discretion. First, a party must ask for vacatur. *See Munsingwear*, 340 U.S. at 40; *Radiant*, 951 F.3d at 397. Second, and most importantly, we'll vacate an order only if leaving it in place would have a preclusive effect on subsequent litigation. *See Radiant*, 951 F.3d at 397; *see also Fialka-Feldman v. Oakland Univ. Bd. of Trs.*, 639 F.3d 711, 716 (6th Cir. 2011). And third, we're unlikely to grant vacatur when the party seeking it played a role in causing the order's mootness. *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 24–25 (1994). As the party requesting relief, Shaw carries the burden of showing that she meets these criteria. *Id.* at 26. Since Shaw fails to satisfy the second and third prongs, vacatur is unwarranted.

*Preclusive Effect.* A district court's order sometimes precludes parties from relitigating the issues underlying that order. *See Munsingwear*, 340 U.S. at 40. But it wouldn't be fair to "compel [a] losing party to live with the . . . preclusive effects of [an] adverse ruling without having had a chance to appeal it." *Fialka-Feldman*, 639 F.3d at 716. Thus, to "clear[] the path for future relitigation," we typically vacate final orders that become moot pending appeal. *Munsingwear*, 340 U.S. at 40.

A moot preliminary injunction doesn't present these same issues. Moot preliminary-injunction orders usually have "no preclusive effect." *Radiant*, 951 F.3d at 397 (quoting *Gjertsen v. Bd. of Election Comm'rs*, 751 F.2d 199, 202 (7th Cir. 1984) (Posner, J.)). Indeed, a court's resolution of issues in a preliminary-injunction order is never binding on a case's underlying merits. *Camenisch*, 451 U.S. at 395. Thus, our circuit usually doesn't vacate them. *See, e.g.*, *Radiant*, 951 F.3d at 396–97.

There are exceptions to this rule because, in some extraordinary cases, a moot preliminary injunction can have a preclusive effect on future litigation. *See, e.g.*, *Ohio*, 969 F.3d at 310; *cf. Lummus Co. v. Commonwealth Oil Refin. Co.*, 297 F.2d 80, 89 (2d Cir. 1961) (Friendly, J.). For example, consider our decision in *Ohio v. Environmental Protection Agency*. There, a district court denied the plaintiffs' motion to preliminarily enjoin a 2015 EPA regulation. *Ohio*, 969 F.3d at 308. While the appeal of that denial was pending, the EPA repealed and replaced the challenged regulation. *Id.* We therefore dismissed the appeal as moot. *Id.* at 310. Contrary to the general rule, however, we also vacated the district court's preliminary-injunction order. *Id.* That's because, at the time, it was "reasonably likely" the new regulation would be enjoined nationwide, causing the 2015 regulation to take effect again. *Id.* And if that happened, the district court's original order might have precluded plaintiffs from resuming their quest for a preliminary injunction. Because that wouldn't have been fair—the plaintiffs might have been estopped by an order they couldn't challenge on appeal—we vacated the order. *See id.*

Here, there's no chance that the challenged portion of the district court's order will have a preclusive effect on Shaw. The order's factual findings and legal conclusions do not bind the final resolution of MDI's breach-of-contract claim. And there's no possibility that the order will have a preclusive effect on a future preliminary injunction, either. Shaw challenges only the portion of the order that enforced the one-year noncompete clause in her contract. That clause has since expired, so MDI can't seek a similar preliminary injunction in the future. Thus, the now-moot portion of the court's order won't have any preclusive effect.

*Shaw's Role in Causing Mootness.* As an equitable remedy, vacatur is subject to equity's "clean-hands" requirement. *See U.S. Bancorp*, 513 U.S. at 25. So we're unlikely to vacate a moot order when the losing party contributed to the appeal's mootness. *See Coal. for Gov't Procurement*, 365 F.3d at 485; *Radiant*, 951 F.3d at 397. Here, Shaw requested three deadline extensions while the injunction's one-year timer was ticking down—albeit two in the pursuit of a settlement. Thus, Shaw contributed to this appeal's mootness.

To be sure, MDI also bears its fair share of the blame. After all, MDI requested three extensions of its own. But absent any indication that MDI was seeking to run out the clock, we can't say that Shaw was "frustrated by the vagaries of circumstance" or that "mootness result[ed]

from unilateral action of the party who prevailed below." *U.S. Bancorp*, 513 U.S. at 25 ("The denial of vacatur is merely one application of the principle that '[a] suitor's conduct in relation to the matter at hand may disentitle him to the relief he seeks.'" (quoting *Sanders v. United States*, 373 U.S. 1, 17 (1963))).

In sum, courts must consider three factors when determining whether to vacate a moot order. The most significant consideration is whether the order has preclusive effect. Here, it does not. Therefore, even though Shaw's role in causing this appeal's mootness stemmed from her laudable settlement efforts, vacatur is inappropriate here.[1]

\*     \*     \*

We dismiss this appeal as moot and remand the case for further proceedings.

---

[1]Of course, nothing here should discourage parties from discussing settlement while an appeal is pending. Courts "historically have counted on the resolution of disputes to conserve limited judicial resources." *Borror Prop. Mgmt., LLC v. Oro Karric North, LLC*, 979 F.3d 491, 496 (6th Cir. 2020); *see also Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976) ("Public policy strongly favors settlement of disputes without litigation.").